# FOURTH DISTRICT, 1896.

### G. G. CLIFFORD ET AL. v. C. N. LEROUX.

Delivered September 23, 1896.

**1.  Damages—Speculative and Remote.**

Damages from a failure to rent the rooms in an office building, claimed to have resulted from the failure to construct an elevator in the building according to contract, are speculative and too remote to be recovered.

**2.  Remittitur Curing Error in Charge.**

Where, in an action for the contract price of an elevator placed in defendants' building, plaintiff recovers, and then enters a remittitur of the amount of all damages claimed in reconvention by defendants, measured by their own rule, this renders harmless any error in the charge in reference to such damages.

APPEAL from Bexar.   Tried below before Hon. S. G. NEWTON.

*Upson & Bergstrom*, for appellants.

*Wm. Aubrey* and *C. K. Brenneman*, for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was instituted by appellee against appellants, G. G. Clifford and Kate Elliot, on three promissory notes made by them to the appellee.  The first note was executed on the 8th of March, 1894, for $559.49.   The other two were executed on the 26th of May, 1894, for $458.20 each:   The notes were payable four, five and six months after their respective dates, with interest therefrom at the rate of 10 per cent per annum, and 10 per cent attorney's fees if collected by process of law.

The appellants answered that they were the owners of a certain building in the city of San Antonio, designed to be rented for office purposes; that it was constructed with four stories and a basement, and contained twenty-three rooms and a balcony; that the reasonable rental value of the rooms, on an average, was $16 per month each; that for the purpose of utilizing the upper stories, plaintiff and defendants, on the 2nd day of January, 1894, entered into a contract in writing whereby plaintiff agreed and bound himself to furnish the material and labor and place in said building an elevator, which was to be constructed and completed in a workmanlike manner, within a reasonable time, and to be of sufficient capacity, with a pressure of sixty pounds hydraulic to operate it at a speed of two hundred feet per minute when raising an average weight, which meant seven hundred and fifty pounds.   In consideration whereof defendants agreed and bound themselves to pay plaintiffs the sum of $1307.

That plaintiff further agreed and bound himself for a reasonable compensation, to put in all necessary pipe and all connections from defendant's building to a certain tank owned by Geo. Dullnig, and to so construct the same in connection with the elevator as to furnish a pressure of sixty pounds hydraulic with which to operate the elevator, and that when so constructed the same should operate the elevator in accordance with the guarantees of said contract; and further bound and obligated himself in such contract to keep said elevator, piping and all attachments in repair and in good condition to operate in accordance with the terms of the contract for one year thereafter, which contract was verbal.

That plaintiff undertook to place in said building such elevator in accordance with the terms of said contract, and also to furnish and place all the pipes, attachments and connections with said tank, but when completed the elevator could not be made to carry an average weight at about two hundred feet per minute, and said piping and attachments were defective, leaky and could not be made to keep up the pressure of sixty pounds hydraulic with which to operate said elevator.

That it was provided by said contract that the elevator should be constructed under the direction and to the satisfaction of J. R. Gordon, architect in charge of the construction of said building, but that it had never been accepted by Gordon, because it was not constructed in accordance with said contract and plans and specifications therefor, and that the elevator and attachments had never been accepted by defendants, nor had they ever waived such acceptance or agreed to accept the same. That defendants had paid on account of material furnished and labor done in the construction of the pipes; connections and attachments therefor, including repairs, the sum of $804.

That the notes sued on were executed and delivered to plaintiff in payment of the contract price of said elevator, but that they were without consideration, because of plaintiff's failure to comply with his contract; that by reason of his failure to so construct the elevator for operation, defendants were greatly damaged by their inability to rent the rooms for offices in the upper stories of said building, and that their damages, as specifically set out, amount to $2000.

The answer closed with a prayer that plaintiffs take nothing by their suit, and that defendants recover the amount of money paid plaintiff on his contract, as well as their damages.

To which answer the plaintiff specially excepted upon the ground that they failed to state any legal measure of damages. The plaintiff, in his supplemental petition, also plead: (1) That the notes sued on were made long after the elevator, its appurtenances and attachments, including the piping, etc., had been used and accepted by defendants, and with full knowledge on their part of all the facts involved in this controversy; and, (2) That on the 3rd day of January, 1893, plaintiff employed The James L. Haven Company, of Cincinnati, Ohio, to construct and put in position the certain hydraulic elevator,

in defendant's pleadings specified, and on that date entered into a contract with said company, whereby it agreed to construct and put in position said hydraulic elevator substantially according to the terms and specifications in the agreement alleged to have been made by and between the plaintiff and defendants, in consideration whereof plaintiff agreed to pay James L. Haven Company for said machine $1150, less five per cent commission; that afterwards on the first day of March, 1894, said company constructed and placed the said elevator in position; that defendants accepted and received said elevator on the day last mentioned, and promised to pay therefor $1307, the contract price; that being moved and induced by such receipt and acceptance of said machine by defendants, the plaintiff paid said James L. Haven Company the full contract price therefor. Wherefore plaintiff says that defendants are estopped to plead a want of consideration for the notes sued on, or otherwise seek to defeat the payment of the sum of money agreed by them to be paid in said notes.

The plaintiff further denied all and singular the allegations in defendants' pleadings, except so far as they were admitted in his supplemental petition to be true.

After the special exceptions of plaintiff, recited in this statement of the case, were sustained, the cause was submitted to a jury and a verdict was returned in plaintiff's favor for $1870.45, the amount specified in the notes, including interest and attorney's fees. Upon this verdict judgment was rendered. Upon this judgment the plaintiff entered a remittitur of $353, it being stated in the remittitur that it was the entire amount of the purchase price of the piping and connections alleged by defendants to have been sold them by plaintiff. From this judgment, with the sum remitted, this appeal is prosecuted.

Our conclusions of fact are: That the notes sued on were executed by appellants in consideration of the performance by appellee of the written and verbal contracts set out in appellant's answer; that when executed, appellants had received the elevator and its appurtenances with full knowledge of how the contracts had been performed, and that the verbal contract was not performed so as to furnish the pressure thereby contracted for. The consideration agreed to be paid by appellants to appellee on the verbal contract was $275.14.

There was no error in the court's sustaining the special exceptions to appellants' answer, wherein he claimed damages for his failure to rent the rooms in the building. Such damages are speculative and too remote to be recovered.

There is nothing in the written contract requiring the appellee to put in the necessary pipe and connections from the Dullnig tank to the elevator so as to furnish the pressure with which to operate the elevator. It is alleged, as is seen from our statement of the case, in respect to this matter, that there was an oral contract, but it is not averred that such verbal contract was a part of the contract expressed in writing, or, in other words, that the written and verbal agreement taken together con-

stituted one and the entire contract between the parties. On the contrary, it seems from the pleadings, that the considerations on which these alleged agreements are based are separable and different. Under the written agreement no pressure was guaranteed; such guarantee, according to the allegations, was made in the verbal contract. Therefore as the written and verbal agreements were not averred to constitute an entire contract, it was not incumbent upon the court to instruct the jury, as is contended by appellants it should, upon the "issue as to whether there was an entire contract in which plaintiff guaranteed to secure the pressure, etc.," for no such issue as is contended for was made by the pleadings. In fact the appellants never requested a charge on such an issue. They did ask the court to give the following charge: "You are further charged that if you believe from the evidence that plaintiff C. N. Leroux entered into a verbal contract with the defendants to furnish the labor and material to make a pipe connection with the Dullnig tank, and an elevator to be put in defendant's building by plaintiff, and guaranteed to procure thereby an hydraulic pressure of sixty pounds at the valve of such elevator, and in connection therewith, to operate such elevator in accordance with the guarantees of the written contract, and if you further believe from the evidence that plaintiff failed to comply with said contract, or any material part thereof, and you further find from the evidence that defendants have never accepted nor used the same, and you further believe from the evidence that defendants have paid to plaintiff any sum of money on account of such contract, then you will allow defendants any credit therefor against plaintiff and say by your verdict what balance you find in favor of either party." This charge, as does appellants' pleadings, treats the verbal contract as one separate from the written agreement. Without deciding whether the refusal of the court to give this charge was error or not, we will say that if its refusal was error it was cured by the appellee's remitting everything that was to be paid him on such verbal contract, for by such remittitur the appellants obtained everything they asked in such special charge. All the damages claimed by the pleadings arose from the alleged failure of appellee to comply with the verbal contract, and as they have obtained by the remittitur entered by the appellee the damages measured by their own rule, the charge of estoppel given by the court could work no injury to the appellants.

There is no error in our opinion, which requires a reversal of the judgment, and it is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

NEILL, ASSOCIATE JUSTICE.—We fully agree with counsel for appellant in their proposition that the court was not warranted by the evidence in charging upon appellee's plea of estoppel because the testimony failed to show the presence of several essential elements of an estoppel in pais, and this, though not definitely expressed in the opinion, was our conclu-

sion when it was written. We thought, however, and still think, that, in view of the remittitur, this error was not prejudicial. The defect in the elevator did not arise from appellee's failure to comply with his written contract, but from a non-compliance with the oral contract to furnish piping and pressure to operate the elevator—which contract we still think under the pleadings and evidence cannot be considered a part of the one in writing. As the remittitur covered everything claimed by reason of a breach of the oral contract, and as there was no evidence to show a failure on the part of appellee to comply with the written agreement, the charge upon estoppel could have only influenced the jury on the matters pertaining to the oral contract, and, as such matters were wholly eliminated by the remittitur, the error in giving the charge could not have been carried into the judgment appealed from.

The motion is overruled.                        *Overruled.*